UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| YAZMIN SANTIAGO,<br><br>    Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,<br><br>    Defendant. | Case No. 22-cv-11162-DJC |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                     **January 29, 2024**

## I. Introduction

Plaintiff Yazmin Santiago ("Santiago") applied for disability insurance benefits ("SSDI") and supplemental security income ("SSI") with the Social Security Administration ("SSA"). Pursuant to the procedures set forth in the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), Santiago brings this action for judicial review of the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("the Commissioner"), issued by an Administrative Law Judge ("ALJ") on October 29, 2020, denying her claim. Santiago has moved to reverse and remand the decision of the Commissioner, D. 19, and the Commissioner has moved to affirm the decision. D. 21. For the reasons stated below, Santiago's motion to reverse and remand is ALLOWED, and the Commissioner's motion to affirm is DENIED.

## II. Legal Standards

### A. Entitlement to Disability Benefits and Supplemental Security Income

To receive SSDI and SSI benefits, a claimant must demonstrate that she is disabled, as defined by the Social Security Act (the "Act") and corresponding regulations. 42 U.S.C. § 423(a). The Act and regulations define disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505. The impact of the disability or disabilities must be so severe as to prevent a claimant from not only maintaining employment similar to previous work, but also from doing any substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The Commissioner must follow a five-step process to determine whether a claimant has a disability for Social Security purposes and, thus, whether to approve the claimant's application for benefits. 20 C.F.R. § 416.920(a). If at any step in the process the Commissioner conclusively finds the claimant to be disabled or not disabled, then the inquiry ends. Id. § 416.920(a)(4). First, if the claimant is doing any substantial gainful activity, then the claimant is not disabled. Id. § 416.920(a)(4)(i). Second, if the claimant does not have, or has not had during the relevant time period, a severe, medically determinable physical or mental impairment or combination of impairments, then the claimant is not disabled. Id. § 416.920(a)(4)(ii). Third, if the impairment(s) meets the conditions for one of the "listed" impairments in the Social Security regulations, then the claimant is disabled. Id. § 416.920(a)(4)(iii). Fourth, if the claimant's "residual functional capacity" ("RFC") shows that the claimant can still perform past relevant work, then the claimant

is not disabled. Id. § 416.920(a)(4)(iv). Fifth and finally, if the claimant's RFC, education, work experience, and age show that the claimant is capable of any other work in the national economy, then the claimant is not disabled. Id. § 416.920(a)(4)(v); see id. § 416.960(c).

### B.     Standard of Review

This Court may affirm, modify or reverse the decision of the Commissioner upon review of the pleadings and the record. 42 U.S.C. § 405(g). Such review is limited to an evaluation of "whether there is substantial evidence to support the ALJ's fact findings and whether appropriate legal standards were employed." Jones v. Soc. Sec. Admin., 150 Fed. Appx. 1, 1–2 (1st Cir. 2005) (citing Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)). Accordingly, the ALJ's findings of fact must be affirmed when supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion." Rodriguez v. Sec'y of Health & Hum. Servs., 647 F.2d 218, 222 (1st Cir. 1981). A denial of relief will not be upheld, however, where there has been an error of law. See Manso-Pizarro v. Sec'y Health & Hum. Servs., 76 F.3d 15, 16 (1st Cir. 1996). The district court reviews questions of law *de novo*. Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).

## III.    Factual Background

### A.     Procedural History

Santiago claimed an inability to work since February 15, 2009. R. 264.[1] She was thirty years old as of the alleged onset date. R. 32. On or about February 21, 2017, Santiago applied for SSDI and SSI. R. 264. She alleged impairments including fibromyalgia, seizures, asthma,

---

[1] Citations to the administrative record in this case shall be to "R. ___."

migraines, arthritis, lupus, depression, anxiety and degenerative lumbar. R. 170–71. SSA denied the application on May 17, 2017. R. 288–97.

On May 23, 2017, Santiago requested reconsideration of the initial denial; the SSA concluded that the denial was proper and informed Santiago of same on June 26, 2017. R. 298–99, 302–08. On July 18, 2017, Santiago requested a hearing before an ALJ. R. 310–11. Prior to the hearing, in a letter dated October 24, 2017, Santiago's counsel amended the alleged onset date to January 8, 2017. R. 264. On November 28, 2017, after a hearing, an ALJ issued a written decision concluding that Santiago was not disabled. R. 264–73. Santiago appealed the decision to the Social Security's Appeals Council ("AC"). R. 380–82. The AC remanded the case to the ALJ to obtain additional evidence concerning Santiago's depression and post-traumatic stress disorder, further consider her RFC and, if warranted, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on Santiago's occupational base. R. 284.

On February 26, 2019, after a hearing, an ALJ concluded again that Santiago was not disabled. R. 21–34. Santiago appealed the decision, R. 483, and the AC denied her request for review. R. 2982–84. Santiago filed a complaint before another session of this Court, seeking the review and remand of the ALJ's decision. R. 2992–93. Following a joint request to remand, the Court reversed and remanded the decision of the Commissioner. R. 2994–95; see Santiago v. Berryhill, No. 1:19-cv-11591-ADB (D. Mass. Feb. 10, 2020), D. 16. The AC then remanded the case to an ALJ with instructions to evaluate further the extent to which Santiago's medically determinable impairments limit her ability to perform basic work activities, further consider Santiago's RFC, and consider the affidavit of a certified rehabilitation counselor. R. 3003.

An ALJ held a hearing on September 29, 2020, R. 2884, and on October 29, 2020 issued a written decision concluding that Santiago was not disabled. R. 2884–2902. The AC rejected Santiago's appeal of this decision on May 17, 2022, rendering it the final decision of the Commissioner. R. 2871–74. Santiago then filed this lawsuit against the Commissioner, D. 1, and now moves this Court for an order reversing and remanding the Commissioner's final decision. D. 19. The Commissioner has moved for an order affirming same. D. 21.

**B.     Before the ALJ**

The record before the ALJ included the following: (1) testimony at the ALJ hearing; (2) Santiago's medical records; and (3) state agency expert examinations and assessments of Santiago's RFC.

*1.     Testimony at the ALJ Hearing*

Santiago testified before the ALJ at the September 29, 2020 hearing with the assistance of a Spanish interpreter. R. 2915. She testified that she was forty-one years old as of the hearing date and discussed her education, work history, social activities and living situation. R. 2921–26. She stated that, due to her weight, sitting down or standing up for long periods of time hurts her back. R. 2925. She added that, the day before the ALJ hearing, her doctor informed her at an appointment that she has arthritis in her back. R. 2925–26.

When asked about her most significant physical impairment, Santiago testified that her "epilepsy is well under control" but that pain in her body, back, legs and head prevents her from working regular hours. R. 2926. She added that because she is allergic to aspirin, she has to take other medications including Nortriptyline. R. 2926–27. The ALJ then asked Santiago about her mental health. R. 2927. Santiago testified that she had last seen a counselor or therapist in November 2019 and that, although she was not currently seeing anyone, she had been waiting to

5

hear from a clinic about her request for treatment. R. 2927. Santiago further testified that she was not taking any medications for her mental health issues; however, her attorney noted that Nortriptyline is prescribed both as an antidepressant and as a pain medication. R. 2927.

Upon examination by her attorney, Santiago testified about her migraine headaches. R. 2928–29. She testified that she is prescribed Imitrex for her headaches. R. 2928. She added that she had been to the hospital twice in the prior twelve months due to her headaches. R. 2929. Santiago stated that she experienced headaches "two or three times in a week" and that they would last about one or two days, to the point where she would need to lay down and cover her eyes until the pain subsides. R. 2929.

Santiago also testified that she had been diagnosed with post-traumatic stress disorder ("PTSD"). R. 2930. She added that, when her PTSD triggers, she gets anxious, bites her nails and has to move around. R. 2930. She testified that her PTSD episodes range from less than one hour to up to three hours. R. 2930. Santiago testified that when she has these symptoms, she will try to keep herself busy (i.e., "will just tear everything apart, clean everything and then I will put it back together"). R. 2931. When asked whether she has any problem going to the grocery stores or shopping, she responded that she sometimes forgets where she is standing. R. 2931.

The ALJ also heard the testimony of vocational expert Estelle Hutchinson. R. 2914, 2932–49. Hutchinson testified about Santiago's prior work at Walmart and as a cleaner in a school. R. 2937. She testified that Santiago's work at Walmart required medium exertion and that her job as a school cleaner required light exertion. R. 2937. The ALJ then asked her a series of hypotheticals to discern whether individuals with RFCs potentially comparable to Santiago's functional capacity could perform Santiago's past work and whether there would be other jobs in the national economy that could be performed by such hypothetical individuals. R. 2937–46.

Hutchinson testified that these hypothetical individuals could perform Santiago's past work and that there were other jobs in the national economy that they could alternatively perform. R. 2938–46.

2.  *Santiago's Medical Records*

In addition to Santiago's testimony, the ALJ also had her medical records to consider. According to these records, Santiago has experienced diffuse pain in her body, including in her joints, lower back and neck. R. 756, 1514. Treatment of same has included medication, physical therapy and injections. R. 1218–19. As of April 2016, musculoskeletal examination showed joints consistent with fibromyalgia syndrome and chronic pain. R. 828–32. One examiner noted "tenderness to palpation about the bilateral lumbar paraspinal muscles" and pain that was "severely exacerbated by palpating the lateral left back over the left quadratus lumborum." R. 1517.

Medical records also indicate that Santiago has suffered from a seizure disorder, although her seizures have generally been controlled by Keppra. R. 845, 1119–23, 1133, 1269, 1652–54. As of June 2018, her electroencephalogram test results indicated "[n]o significant asymmetries." R. 1656. Santiago has also suffered from migraine headaches with nausea and occasional vomiting. R. 1007, 1027, 1051, 1084, 1570. In addition, medical records indicate that Santiago has been treated for obesity. R. 1380. Santiago has screened positive for abnormal eating patterns including binge eating with compensatory vomiting. R. 1380, 3611.

Santiago's medical records also show that she has suffered from mental illness, including PTSD, bipolar disorder, anxiety, depression with symptoms of irritability, periods of hyperactivity, racing thoughts, self-isolation, difficulty sleeping and nightmares. R. 950, 954, 958, 1268–72. Santiago has exhibited signs of depression during examinations. R. 342–46, 1355, 1375, 1387–

92. As of April 2018, she had been prescribed Seroquel for auditory and visual hallucinations but stopped taking it because she was unable to sleep for three days. R. 1378, 1380.

### 3. State Agency Expert Assessments

The ALJ considered state agency expert assessments of Santiago's functional limits; of relevance here, the ALJ considered the opinions of Dr. Kleinman, Dr. Kasdan and Dr. Bevis. In May 2017, Dr. Kleinman reviewed the medical records available at the time, R. 171–73, and opined that Santiago could carry out simple tasks for two-hour intervals without any social or adaptive limitations. R. 178–79. In June 2017, Dr. Kasdan reviewed the then-available medical records, R. 221–26, 230, and concluded that Santiago could function adequately in a simple, routine work setting with simple/superficial social interactions. R. 234–35.

In May 2018, Dr. Bevis evaluated Santiago in connection with her SSDI and SSI applications, which included an in-person psychodiagnostics interview. R. 1255–59. According to Dr. Bevis, Santiago indicated that she had difficulty working due to poorly controlled seizures and that she had experienced a grand mal seizure on January 27, 2018, because her Keppra dosage had been lowered. R. 1255–56. Dr. Bevis opined that Santiago had major depression, moderate and recurrent, seizure disorder, fibromyalgia, reported history of lupus, migraine headaches, and asthma. R. 1259; see R. 2899.

### C. The ALJ's Decision

Following the five-step process to evaluate whether a claimant is disabled, 20 C.F.R. § 416.920, at step one, the ALJ found that Santiago had engaged in substantial gainful activity since the alleged onset date, but proceeded with the analysis.[3] R. 2887. At step two, the ALJ found that Santiago suffered from the following severe impairments: obesity, degenerative disc

---

[3] Neither party challenges this finding at step one.

disease with lumbar facet antipathy; minimal to moderate cervical degenerative joint disease, with cervical facet joint syndrome; osteoarthritis; mild persistent asthma; seizure disorder; history of hearing loss, bilaterally; migraine headaches; a history of sinus tachycardia; systemic lupus erythematosus; fibromyalgia; hyperalgia; depression; anxiety; and PTSD.  R. 2887–88.  At step three, the ALJ found that Santiago did not have an impairment, alone or in combination, that was one of the "listed" impairments in the Social Security regulations requiring a finding of disability.  R. 2888–91.

Before proceeding to step four, the ALJ determined Santiago's RFC through a two-step analysis.  R. 2892–98.  First, the ALJ considered Santiago's physical or mental impairments that could reasonably be expected to produce her alleged symptoms.  R. 2892–94.  Second, the ALJ evaluated the "intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities."  R. 2892, 2894–98.

As to the first step of identifying Santiago's impairments, the ALJ relied upon medical records to conclude that Santiago was "affected by obesity, lumbar and cervical degenerative joint- and disc- disease, osteoarthritis, asthma, seizure disorder, a history of bilateral hearing loss, migraine headaches, a history sinus tachycardia, systemic lupus erythematosus, fibromyalgia, and hyperalgia."  R. 2892.  The ALJ also noted that Santiago "is affected by depression, anxiety, and post-traumatic stress disorder," R. 2893, and that her "psychological symptoms have impaired her cognitive functioning as well."  R. 2894.

As to the intensity, persistence and limiting effects of these impairments, the ALJ concluded that "the claimant's allegations in this case cannot be wholly accepted" and that "the objective medical evidence does not establish mental and physical conditions of a *severity* consistent with the claimant's alleged impairments."  R. 2894 (emphasis in original).  The ALJ

9

highlighted inconsistencies between Santiago's allegations and the medical record evidence. For example, he noted that healthcare providers had observed Santiago ambulating normally, exhibiting normal strength in her extremities and demonstrating a normal range of motion. R. 2894–95. The ALJ cited medical records indicating that Santiago's sensation and coordination remained substantially intact. R. 2895. With respect to Santiago's asthma, the ALJ pointed to record evidence in which providers had recorded Santiago breathing normally and without wheezing. R. 2895–96. As to obesity, the ALJ considered Santiago's body mass index over the relevant period to determine that it had "not remained gravely elevated." R. 2896. The ALJ also explained that while Santiago's heart rate had been elevated due to her tachycardia, medical records did not indicate a heart rate high enough to support a determination of disability. R. 2896. Concerning Santiago's alleged hearing loss, the ALJ noted that during a psychological consultative examination, the examiner had observed that Santiago was not wearing hearing aids. R. 2896. The ALJ also discussed Santiago's seizure disorder, emphasizing that it had been effectively controlled for many years with medication and discredited Santiago's allegations as to the severity of her migraine headaches in light of recorded observations of providers that Santiago had been ambling normally. R. 2896.

The ALJ similarly scrutinized Santiago's medical records concerning her mental health. R. 2896–97. The ALJ explained that healthcare providers had observed Santiago exhibiting a normal mood and affect, R. 2896–97, and cited medical records indicating that her judgment and insight had been intact. R. 2897. The ALJ also discussed examinations in which Santiago exhibited normal and intact attention. R. 2897. In addition to reviewing medical records, the ALJ emphasized that Social Security representatives who interviewed Santiago in person had observed that Santiago "experienced no difficulty sitting, standing, walking, using her hands or writing" and

that Santiago's part-time work as a receptionist evinced an ability to meet with, and deal with, people. R. 2898.

Accordingly, the ALJ determined that Santiago has the RFC "to perform light work" with the following exceptions:

> the claimant cannot ever climb ladders, ropes, scaffolds. The claimant cannot ever crawl. The claimant can only occasionally balance on narrow, slippery, and uneven terrain. She can occasionally stoop. She can occasionally crouch. She can occasionally kneel. She can occasionally climb ramps or stairs. The claimant must avoid concentrated cold, concentrated heat, and concentrated wetness or humidity. The claimant can tolerate only a moderate-noise work environment. The claimant must avoid excessive vibration. The claimant cannot work around concentrated fumes, odors, dust, gasses, concentrated poorly-ventilated areas, or concentrated chemicals. The claimant must avoid moving machinery. The claimant must avoid unprotected heights. The claimant cannot drive in the work setting. The claimant cannot perform jobs requiring fine hearing (such as tuning instruments). The claimant can perform only simple, routine, and repetitive tasks. She can perform only low-stress work, with only occasional decisionmaking, and only occasional changes in the work setting. She can only occasionally interact with the public. She can only occasionally interact with coworkers. She can tolerate only occasional supervision.

R. 2891–92.

In arriving at this RFC, the ALJ stated that he had also considered the opinions of state agency physicians who provided assessments of Santiago's functional capacity. R. 2898. The doctors opined that Santiago was able to lift and carry at least twenty pounds occasionally and ten pounds frequently but, according to the ALJ, provided "indefinite" assertions as to Santiago's hearing. R. 2898. As to Santiago's mental limitations, the doctors determined that Santiago could maintain concentration and focus on simple tasks "for two hour intervals" R. 2898. Some of the doctors, including Dr. Kasdan, opined that Santiago "may have some difficulties" in social functioning but that she is able to relate adequately with others in "simple and superficial interactions." R. 2898; see R. 235. The ALJ credited the physicians' "physical opinions" of Santiago's functioning, with the exception of their opinions of her hearing limitations. R. 2898.

11

The ALJ did not credit the doctors' assessments of Santiago's "psychological limitations," R. 2898, further noting that "[a]t least some of these writers' psychological limitations are also nonspecific, or equivocal." R. 2898. The ALJ emphasized that these opinions were "afforded little weight" because the physicians "never personally examined the claimant," their assessments were "not well explained," and at least some of them were "inconsistent with the objective documentation of record." R. 2898.

The ALJ also specifically addressed the opinions of Dr. Bevis, the psychological consultative examiner who diagnosed Santiago with major depressive disorder and noted that Santiago experienced depression "related to decreased ability to leave the apartment, her difficulty returning to work, and her general sense of social isolation." R. 2899. The ALJ discredited Dr. Bevis's opinions as "not well explained" and inconsistent with medical evidence of record and determined that many of her opinions were "nonspecific regarding [Santiago]'s maximal functional abilities." R. 2899.

Having determined Santiago's RFC, the ALJ proceeded to steps four and five. At step four, the ALJ found that Santiago was able to perform past relevant work. R. 2899–900. At step five, the ALJ determined that given the claimant's age, work experience, and RFC, "there are other jobs that exist in significant numbers in the national economy that [Santiago] also can perform." R. 2902.

**IV. Discussion**

Santiago argues that the ALJ's assessment of her mental RFC was not supported by substantial evidence. D. 19 at 9–13. Specifically, she argues that by discrediting the opinions of state agency physicians Dr. Kleinman, Dr. Kasdan and Dr. Bevis, the ALJ relied solely upon his own review of the medical evidence of record to assess Santiago's RFC—thus committing legal

12

error. Id. at 11–13. Santiago argues alternatively that the ALJ's rejection of Santiago's limitations was error and that the ALJ also erred at steps four and five. Id. at 13–19.

### A. The ALJ's Assessment of Santiago's Mental RFC

At issue is whether the ALJ's determination of Santiago's mental RFC was supported by substantial evidence where the ALJ did not credit the opinions of Drs. Kleinman, Kasdan and Bevis as to Santiago's psychological limitations. R. 2898–99. The "general rule" is that "an expert is needed to assess the extent of functional loss." Roberts v. Barnhart, 67 Fed. Appx. 621, 622–23 (1st Cir. 2003). "If a claimant has put her functional capacity sufficiently at issue, the hearing officer is obliged to measure the claimant's relevant capabilities and 'to make that measurement, an expert's RFC evaluation is ordinarily essential.'" Beyene v. Astrue, 739 F. Supp. 2d 77, 83 (D. Mass. 2010) (quoting Manso-Pizarro, 76 F.3d at 17). "Thus, a hearing officer's determination of a claimant's RFC made without any assessment of RFC by an expert is unsupported by substantial evidence and must be remanded to obtain further functional evidence." Id. The rationale for this rule is that "[a] hearing officer, as a lay person, generally is not qualified to interpret raw medical data to determine a claimant's RFC." Id.; see Gordils v. Sec'y of Health & Hum. Servs., 921 F.2d 327, 329 (1st Cir. 1990) (explaining that "since bare medical findings are unintelligible to a lay person in terms of residual functional capacity, the ALJ is not qualified to assess residual functional capacity based on a bare medical record").

However, "[a]n ALJ is permitted to render a common-sense judgment about a claimant's mental RFC based on medical findings as long as he does not 'overstep the bounds of a lay person's competence and render a medical judgment.'" Velle v. Berryhill, 444 F. Supp. 3d 299, 312 (D. Mass. 2020) (quoting Gordils, 921 F.2d at 329). "An ALJ may determine RFC only '[i]f th[e] evidence suggests a relatively mild . . . impairment posing, to the layperson's eye, no

13

significant . . . restrictions.'"  Roberts, 67 Fed. Appx. at 623 (alteration in original) (quoting Manso-Pizarro, 76 F.3d at 17–18).

Here, as particularly relevant to her mental health, the ALJ's determination of Santiago's RFC included the following limitations:  "The claimant can perform only simple, routine, and repetitive tasks.  She can perform only low-stress work, with only occasional decisionmaking, and only occasional changes in the work setting.  She can only occasionally interact with the public.  She can only occasionally interact with coworkers.  She can tolerate only occasional supervision."  R. 2892.  As Santiago notes, the ALJ arrived at the RFC after discrediting the expert opinions of record.  R. 2898–99.  Specifically, the ALJ found that these opinions were poorly explained, nonspecific, equivocal and inconsistent with the medical evidence of record.  R. 2898–99.  With no other expert to rely upon, the ALJ necessarily determined Santiago's mental RFC himself, on the basis of the medical records before him.  Because the First Circuit generally disallows such an approach, the ALJ's mental RFC was not supported by substantial evidence unless the evidence supports only relatively mild impairments which, to the layperson's eye, pose no significant restrictions.  See  Roberts, 67 Fed. Appx. at 623.

The record before the ALJ does not support the conclusion that the mental illnesses from which Santiago suffered were relatively mild.  Santiago suffered mental impairments stemming from her depression, anxiety and PTSD.  R. 2887.  As to PTSD in particular, Santiago testified that she would experience PTSD episodes lasting up to three hours and that, during these episodes, she would experience anxiety and need to move around.  R. 2930.  Santiago also testified that she sometimes forgets where she is when she is out running errands.  R. 2930–31.  Moreover, the ALJ himself noted that Santiago's "psychological symptoms have impaired her cognitive functioning."  R. 2894.  Moreover, as Santiago's counsel points out, the interaction between mental health issues

and other of her conditions, e.g., seizure disorder, are also complex and, beyond a lay person's comprehension and require a medical opinion. D. 23 at 2.

Although "[i]t is the ALJ's prerogative to resolve conflicting evidence," Vazquez-Rosario v. Barnhart, 149 Fed. Appx. 8, 10 (1st Cir. 2005), here, Santiago proffered sufficient evidence of her mental impairments to require the ALJ to ground his determination of her mental RFC in the opinions of experts. See Maniscalco v. Colvin, 167 F. Supp. 3d 207, 217–18 (D. Mass. 2016) (noting that "when an ALJ rejects all of the expert RFC opinions in the record and instead relies on his own judgment in determining a claimant's RFC, the ALJ's decision is [ ] unsupported by substantial evidence") (citing Rosado v. Sec'y of Health & Hum. Servs., 807 F.2d 292, 293 (1st Cir. 1986)). Because the ALJ rejected the expert opinions of record as to Santiago's mental RFC, and instead based the mental RFC determination on his own review of the medical records, his assessment was unsupported by substantial evidence. See Beyene, 739 F. Supp. 2d at 83–84.[5]

The Commissioner argues that, even if the ALJ erred by determining Santiago's mental RFC after discrediting Drs. Kleinman, Kasdan and Bevis's expert opinions, reversal and remand is not justified because none of the opinions of record supported a more restrictive mental RFC

---

[5] The Commissioner cites this Court's decision in Black v. Berryhill, No. 17-cv-11987, 2019 WL 135686, at *10–11 (D. Mass. Jan. 7, 2019), to argue that the ALJ was not required to rely upon expert evidence to determine Santiago's RFC. That case is distinguishable. In Black, the only mental impairment was anxiety and there were ample medical opinions before the ALJ noting that the claimant's difficulties with concentration were mild. Id. at *3, *4, *10. Here, Santiago suffers from an array of serious mental impairments including depression and PTSD, and the ALJ himself noted that Santiago's psychological symptoms have impaired her cognitive functioning. R. 2887, 2894. Medical records also indicate that Santiago may suffer from bipolar disorder and auditory or visual hallucinations, further indicating that any mental impairment is not so mild as to permit the ALJ to render a common-sense judgment of any functional limitations. R. 1378–79; see Velle, 444 F. Supp. 3d at 312. Because the "interrelationship" of Santiago's "severe psychological impairments may affect her RFC to perform work in the national economy," credible expert opinions were required and remand is appropriate. See Beyene, 739 F. Supp. 2d at 83–84.

and so any error was harmless. See D. 22 at 8–11. For example, the Commissioner suggests a consistency between Dr. Kleinman's opinions and the ALJ's determination, namely that Dr. Kleinman found that Santiago "[c]an focus on simple tasks for 2hr intervals in an 8hr day," and that the ALJ concluded that "[t]he claimant can perform only simple, routine, and repetitive tasks." Id. at 8. In support of this argument, the Commissioner cites a line of cases from this District including Smith v. Berryhill, 370 F. Supp. 3d 282, 289 (D. Mass. 2019), Lopardo v. Berryhill, No. 3:17-cv-30185-KAR, 2019 WL 1284820, at *11 (D. Mass. Mar. 20, 2019), and Yearling v. Colvin, 292 F. Supp. 3d 515, 519–20 (D. Mass. 2017). See D. 22 at 10.

These cases hold that where an ALJ has not discredited expert opinions of a claimant's functional loss and assesses an RFC that is more restrictive than these opinions, any resultant error is harmless. See Smith, 370 F. Supp. 3d at 288–89 (concluding that any error as to the ALJ's RFC determination was harmless where it was "more restrictive" than the restrictions identified by an expert whose opinion was given "some, but not great, weight"); Lopardo, 2019 WL 1284820, at *10–11 (holding that the ALJ's failure to specify the weight given to expert opinions was harmless error because the decision demonstrated the ALJ's awareness of the experts' reports and the ALJ's RFC was more favorable to the claimant than the experts' RFC analysis); Yearling, 292 F. Supp. 3d at 519–20 (holding that an ALJ did not commit reversible error where the ALJ's RFC determination was more restrictive than the limitations identified by state agency physicians whose opinions were given "great weight"). By contrast, here, the ALJ affirmatively gave little weight to the expert opinions of Santiago's psychological limitations. The ALJ did note that Dr. Bevis had diagnosed Santiago with major depressive disorder and that the record also reflected diagnoses of anxiety and PTSD. R. 2894. Even so, the only medical opinions about the impact of her mental condition on her functionality were the opinions of Drs. Kleinman, Kasdan and Bevis, but the ALJ

16

afforded them "little weight" since some of their limitations were "nonspecific, or equivocal" and/or "inconsistent" with other parts of her medical record. R. 2898. As a result, the ALJ's opinion reflects reviewing and weighing the medical record to reach his own conclusion about the impact of her mental diagnoses on her functionality with no reliance upon medical opinion, see R. 2897-99, which is what he may not do. Moreover, although the ALJ determined a RFC of "light work" with some exceptions for Santiago, R. 2891-92, it was not "more restrictive" than the limitations identified by these opinions. See, e.g. R. 178 (opining by Kleinman that Santiago was "moderately limited" in ability to maintain attention and concentration for extended period," "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," "ability to sustain an ordinary routine without special supervision," "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and explaining that Santiago "[c]an focus on simple tasks for 2 [hour] intervals in an 8 [hour] day"); R. 234-35 (opining by Dr. Kasdan that Santiago was "moderately" limited by "ability to carry out detailed instructions," "ability to maintain attention and concentration for extended periods," "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and explaining that Santiago "[a]ppears able to maintain adequate concentration/pace to simple tasks for 2 hour intervals in an 8 hour day"); see Yearling, 292 F. Supp. 3d at 520. As just one example, the ALJ's RFC included no exceptions from light work for breaks although two of the state evaluators indicated moderate limitations in Santiago's ability to maintain attention and concentration for an extended period, and suggested that any focus on simple tasks should be for 2-hour intervals. Compare R. 2891-92 with R. 178, 234-35. Thus,

17

the Court declines to dismiss the ALJ's error as harmless. On remand, the ALJ should obtain credible expert opinions of Santiago's mental RFC and ensure any determination as to her mental RFC is supported by these credible expert opinions.[6]

### B.   The ALJ's Assessment of Santiago's Allegations

The Court also has considered Santiago's argument that the ALJ erroneously discredited her statements about her health. D. 19 at 13–17. "In evaluating subjective complaints of pain, the ALJ must first determine whether there is a 'clinically determinable medical impairment that can reasonably be expected to produce the pain alleged.'" Makuch v. Halter, 170 F. Supp. 2d 117, 126 (D. Mass. 2001) (quoting Avery v. Sec'y of Health & Hum. Servs., 797 F.2d 19, 21 (1st Cir. 1986)). The ALJ should also consider the statements of the claimant or her doctor, consistent with medical findings. Id. "The ALJ, in resolving conflicts of evidence, may determine that the claimant's subjective complaints concerning [her] condition 'are not consistent with objective medical findings of record,' if the ALJ's determination is supported by evidence in the record." Id. (quoting Evangelista v. Sec'y of Health & Hum. Servs., 826 F.2d 136, 141 (1st Cir. 1987)).

The ALJ's credibility determination "is entitled to deference, especially when supported by specific findings." Frustaglia v. Secretary of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987); see Gordils, 921 F.2d at 330. "However, an ALJ who does not believe a claimant's testimony regarding [her] pain, 'must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant].'" Makuch, 170 F. Supp. 2d at 126 (alteration in original) (quoting Da Rosa v. Sec'y Health & Hum. Servs., 803 F.2d 24, 26 (1st Cir.

---

[6] The ALJ's findings at steps four and five were premised on the ALJ's RFC determination. Because the Court concludes that the ALJ's mental RFC determination was unsupported by substantial evidence, the Court does not reach Santiago's further argument that the ALJ erred at steps four and five, where those determinations flowed from the RFC. D. 19 at 17-19.

1986)); see Becker v. Sec'y of Health & Hum. Servs., 895 F.2d 34, 36–37 (1st Cir. 1990) (giving weight to the ALJ's credibility determinations because the ALJ has the opportunity to view the witnesses and has special expertise and knowledge of the subject matter).

Having reviewed the ALJ's decision, the Court discerns no error in the ALJ's assessment of Santiago's statements as to the intensity, persistence and limiting effects of her alleged impairments. In concluding that these statements could not be wholly accepted, the ALJ made "specific findings as to the relevant evidence he considered in determining to disbelieve" the claimant. See Carr v. Astrue, No. 09-10502-NG, 2010 WL 3895189, at *6 (D. Mass. Sept. 30, 2010) (internal citation omitted). For example, in assessing Santiago's allegations as to her physical impairments, the ALJ noted that healthcare providers had observed Santiago ambulating normally, exhibiting normal strength in her extremities and demonstrating a normal range of motion, R. 2894–95, and cited medical records indicating that Santiago's sensation and coordination had remained substantially intact. R. 2895. The ALJ's findings as to Santiago's other allegations were similarly supported by specific cites to the record. R. 2894-98.

Nevertheless, in light of the Court's conclusion that the ALJ erred in determining Santiago's mental RFC, the Court will allow Santiago's motion for reversal of the Commissioner's final decision and remand the case back to SSA for further proceedings consistent with this opinion.

V. **Conclusion**

For the reasons stated, Santiago's motion to reverse and remand, D. 19, is ALLOWED and the Commissioner's motion to affirm, D. 21, is DENIED.

**So Ordered.**

                                                   /s/ Denise J. Casper
                                                   United States District Judge